T.C. Memo. 1995-609


UNITED STATES TAX COURT


ERIC WYNN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16914-91.          Filed December 27, 1995.


Eric Wynn, pro se.

<u>Frank A. Racaniello</u> and <u>William F. Halley</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


BEGHE, <u>Judge</u>:  Respondent determined the following

deficiencies in and additions to petitioner's Federal income tax:

| | | Additions to Tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(b)(1) | Sec. 6653(b)(2) | Sec. 6661 |
| 1983 | $79,722 | $39,861 | 1 | $19,931 |
| 1984 | 39,785 | 19,982 | 1 | 9,946 |

[1] The addition to tax under sec. 6653(b)(2) is 50 percent of the interest payable under sec. 6601 with respect to the portion of the underpayment that is attributable to fraud.

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner has conceded an increased deficiency of $27,199 for 1983, with corresponding additions to tax for fraud under section 6653(b)(1) and (2) and for substantial understatement under section 6661.

After other concessions by the parties, the following issues remain for decision: (1) Whether and in what amount petitioner is liable for the fraud additions under section 6653(b)(1) and (2) for 1983; (2) whether and in what amount petitioner is liable for the fraud additions under section 6653(b)(1) and (2) for 1984; (3) whether and in what amounts petitioner had unreported embezzlement income for the years in issue and unreported consulting income for 1984; (4) in the alternative to the fraud additions, whether petitioner is liable for additions to tax for negligence under section 6653(a)(1) and (2) for 1983 and 1984; (5) whether petitioner is liable for the addition to tax for substantial understatement under section 6661 for 1983 and 1984;

and (6) in the alternative to the fraud additions for 1984, whether petitioner is also liable for an addition to tax for late filing under section 6651(a).

We hold that:  (1) For 1983, petitioner is collaterally estopped from denying that he committed fraud and is liable for the section 6653(b)(1) fraud addition because of his guilty plea to criminal tax fraud, but that petitioner is not liable for the section 6653(b)(2) fraud addition, except with respect to two items as to which he both pleaded guilty to criminal tax fraud and has otherwise conceded; (2) for 1984, petitioner is not liable for any section 6653(b)(1) or (2) fraud additions; (3) respondent's deficiency determinations are upheld for both 1983 and 1984; (4) petitioner is liable for additions to tax for negligence for 1984; (5) petitioner is liable for additions to tax for substantial understatement for 1983 and 1984; and (6) petitioner is liable for an addition to tax for late filing for 1984.

FINDINGS OF FACT

The parties have stipulated some of the facts, and the stipulations of fact and attached exhibits are incorporated in this opinion.  Petitioner resided in Bradford, Pennsylvania, when he filed his petition.

During the years in issue petitioner was the president of Renaissance Enterprises, Inc. (Renaissance).  Renaissance was

incorporated by petitioner under Delaware law in 1983 with the ostensible primary purpose, as stated in its original certificate of incorporation, of manufacturing and selling jewelry. Renaissance had an underwritten initial public offering of common stock that raised $750,000, which was placed in escrow. Petitioner signed the joint authorization with the president of the underwriter to pay the net proceeds of the offering, amounting to $636,631, into a Renaissance bank account.

In 1988, a Federal grand jury returned a 12-count indictment against petitioner, Mrs. Wynn, and Francis S. LaMagra, alleging, among other things, criminal tax evasion under section 7201 for 1983 and 1984 and interstate transportation of stolen property under 18 U.S.C. section 2314 (1988). Petitioner pleaded guilty to tax evasion under section 7201 with respect to his personal income tax return for 1983, and to interstate transportation of stolen property under 18 U.S.C. section 2314 (1988). Petitioner, in his guilty plea, admitted that he had omitted $85,000 in taxable income for 1983 with intent to evade tax. The parties have stipulated that the income petitioner failed to report on his 1983 tax return included the following corporate funds of Renaissance that petitioner converted to his personal use: (1) $54,400 that petitioner transferred by wire from Renaissance to Major Findings, Inc., on September 22, 1983, resulting in the increased deficiency and additions that petitioner has conceded; and (2) a check dated December 16, 1983, drawn on Renaissance's

checking account made payable to Joe Bass in the amount of $31,115. Neither of those adjustments is at issue in this case.

Four sets of transactions remain in issue: (A) Funds paid into a bank account in the name of "Ron Gelfman" in 1983; (B) Renaissance's purchase of jewelry items from Faleck & Margolies, Inc., in 1983 and 1984; (C) Renaissance checks made payable to Weinstock & Yeager in 1983 and 1984; and (D) payments by a brokerage house, at petitioner's request, into a bank account in the name of "Joe Bass" in 1984.

A. Ron Gelfman

On September 29, 1983, a person not identified in the record opened a checking account at the Union City branch of the Trust Company of New Jersey (the Trust Co.), in the name of Ron Gelfman (Gelfman account).[1] On October 31, 1983, a Renaissance check in the amount of $68,200 was deposited in the Gelfman account. The parties have stipulated that Renaissance's corporate records contain what purports to be a receipt from Ron Gelfman Associates, dated October 28, 1985,[2] reflecting the sale of 14K "gold findings" to Renaissance in the amount of $68,200.

---

[1] The record is replete with references to the names Ron or Ronnie Gelfman, Gelman, and Geleman. These are all different spellings of the same name, and for simplicity we will use Gelfman to represent all three spellings.

[2] Neither party addressed the fact that the receipt was dated 2 years after the check. This apparent discrepancy does not affect our decision.

On November 2, 1983, at petitioner's request, Martin Klein, an employee of Faleck & Margolies, Inc. (F&M), a jewelry manufacturer selling at both wholesale and retail, issued an F&M check for $10,755 to Ron Gelfman. The check bears the printed statement: "This check is delivered for payment on the following accounts". Beneath this statement is the handwritten notation "Gold purchase". This check was deposited in the Gelfman account at the Trust Co. Mr. Klein has never met a Ron Gelfman and only made the check payable to him on petitioner's request.

On December 16, 1983, another Renaissance check, in the amount of $45,000, was deposited in the Gelfman account. The parties have stipulated that Renaissance's corporate records contain what purports to be a receipt from Ron Gelfman Associates, dated December 16, 1983, reflecting the sale of 14K gold findings to Renaissance at a price of $45,000.

Petitioner opened a brokerage account at Walter Capital Corp., a securities brokerage firm, in the name of Ron Gelfman. Petitioner routinely traded in and for this account. Walter Capital allowed petitioner to use its facilities to trade in discretionary accounts because it had developed a relationship with petitioner in which petitioner brought in brokerage business rather than just acting as a client. This relationship enabled petitioner to open and trade in discretionary accounts for others.

Ron Gelfman Associates is not known in the local jewelry industry, and the name is not in the IRS computer database for the greater New York area by either name or employee identification number (EIN). The Social Security number for Ron Gelfman on the Trust Co. signature card has never been used on any Federal tax return filed in the New York/New Jersey metropolitan area.[3]

B. Faleck & Margolies, Inc.

F&M operated a retail jewelry division known as "Designs by Maurice" during the years in question. Occasionally, Maurice Goldstein, the employee of F&M who operated "Designs by Maurice", would write receipts on F&M invoices for its retail sales of personal jewelry.

Petitioner had a close relationship with F&M. Petitioner, prior to organizing Renaissance, worked with F&M as a contractor, setting and manufacturing jewelry for F&M. F&M also bought jewelry items from petitioner. After forming Renaissance, petitioner continued to do business with F&M, purchasing jewelry items from F&M until 1985.

---

[3] A Ron Gelfman testified at the criminal trial of Francis LaMagra. Mr. Gelfman, who lived on the West Coast at the time of his testimony, testified that he did not have a bank account at the Trust Co. and that the Social Security number on the account was not his. He also testified that he was acquainted with petitioner from high school days, but that he had not seen or heard from petitioner in over 15 years.

On or about December 21, 1983, a check in the amount of $18,077 made payable to F&M was drawn on the Renaissance bank account. On or about December 21, 1983, a handwritten F&M receipt dated January 5, 1984, was prepared reflecting the sale of "assorted jewelry items" in the amount of $18,077 and showing Renaissance as the purchaser. "Assorted jewelry items" is a term sometimes used by F&M to describe retail personal jewelry items and one-of-a-kind pieces. The parties have stipulated that Renaissance's corporate records contain what purports to be a duplicate receipt, dated December 12, 1983, reflecting the purchase of $18,077 worth of 14K gold watch cases. At the time, F&M did not sell 14K gold watch cases, and the invoice form is not the usual form used by F&M.

On or about February 11, 1984, a check made payable to F&M in the amount of $6,750 was drawn on the Renaissance bank account. On or about February 11, 1984, an F&M receipt was prepared reflecting the sale of "assorted jewelry items" in the amount of $6,750 and showing Renaissance as the purchaser. This receipt has the same form and handwriting as the handwritten receipt issued in January. Both receipts are the type of invoice form usually used by F&M. As with the December 1983 transaction, Renaissance's corporate records contain a duplicate receipt dated February 1, 1984, for $6,750, for 14K "gold findings". Although F&M sold gold findings, this invoice form is not the usual form used by F&M.

C.    <u>Weinstock & Yeager</u>

Weinstock & Yeager (W&Y) is a jewelry firm located in the Manhattan jewelry district.  The parties have stipulated that the corporate records of Renaissance contain what purports to be a receipt from W&Y, dated September 13, 1983, reflecting the sale of 14K gold watch cases to Renaissance in the amount of $1,650. The parties have stipulated that the corporate records of Renaissance contain what purports to be a receipt from W&Y, dated April 15, 1984, reflecting the sale of 14K gold findings to Renaissance in the amount of $7,050.

D.    <u>Joe Bass</u>

On September 14, 1983, petitioner brought in a new checking account to the Weehawken branch of the Trust Co. for a Joe Bass. John Schlitt, the branch manager of the Trust Co. who opened the account, does not recall ever having met anyone named Joe Bass. As with Ron Gelfman, the Social Security number for Joe Bass on the Trust Co. signature card has never been used on any Federal tax return filed in the New York/New Jersey metropolitan area.

In addition to trading securities in accounts at Walter Capital, see <u>supra</u> p. 6, petitioner did consulting and referral work for Walter Capital.  On March 14, 1984, the manager of Walter Capital, Frank Grillo, drew a check on Walter Capital's checking account for $25,000.  At petitioner's request, Mr. Grillo made the check payable to Joe Bass.  The check was deposited in the Joe Bass account at the Trust Co.  On April 2,

1984, Mr. Grillo drew another check on Walter Capital's checking account to Joe Bass, also at petitioner's request.  This check, for $30,000, was deposited in the Joe Bass account at the Trust Co.  Mr. Grillo never met anyone named Joe Bass, and no one named Joe Bass ever worked for Walter Capital.  The Walter Capital checks to Joe Bass were not for services rendered directly by anyone named Joe Bass.

OPINION

Respondent alleges that petitioner embezzled funds from Renaissance by drawing Renaissance checks (and causing F&M to issue a check) to a bank account in the name of Ron Gelfman and failed to report these funds as income on his 1983 Federal income tax returns.  Respondent also alleges that petitioner embezzled Renaissance funds by drawing Renaissance checks to W&Y and to F&M in payment for personal jewelry.  Finally, respondent claims that petitioner failed to include fee income that Walter Capital paid to Joe Bass.  The following schedule lists the amounts still in issue:

|  | 1983 | 1984 |
|---|---|---|
| Renaissance to Ron Gelfman | $68,200 | --- |
| " " " " | 45,000 | --- |
| F&M to Ron Gelfman | 10,755 | --- |
| Renaissance to F&M | 18,077 | $6,750 |
| Renaissance to W&Y | 1,650 | 7,050 |
| Walter Capital payments to Joe Bass | --- | 30,000 |
| " " " " " " | --- | 25,000 |
| Total: | 143,682 | 68,800 |

Respondent has the burden of proof, by clear and convincing evidence, on the fraud issue; petitioner has the burden of proof, by a preponderance of the evidence, on the deficiencies and non-fraud additions. The sparse record of events described in our findings of fact does not compel a holding in favor of either party's contentions. Cf. Ishijima v. Commissioner, T.C. Memo. 1994-353. For the reasons described below, we find that respondent has not proven fraud by clear and convincing evidence beyond what necessarily flows from petitioner's guilty plea in the criminal case and his concessions in the case at hand with respect to the year 1983. Because petitioner offered no proof, he has not borne his burdens of disproving the deficiencies and the nonfraud additions.

Issue 1: 1983--Section 6653(b)(1) and (2)

A. Section 6653(b)(1). Section 6653(b)(1) imposes an addition to tax of 50 percent of the underpayment of tax required to be shown on the return if any part of the underpayment is due to fraud. Respondent bears the burden of proving by clear and convincing evidence that (1) petitioner has an underpayment for the taxable year, and (2) that some part of the underpayment is due to fraud. Sec. 7454(a); Rule 142(b); DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Stone v. Commissioner, 56 T.C. 213, 220 (1971).

Conviction of criminal tax evasion under section 7201 collaterally estops a taxpayer from denying that the fraud

addition under section 6653(b)(1) applies to the determined deficiency.  Gray v. Commissioner, 708 F.2d 243 (6th Cir. 1983), affg. T.C. Memo. 1981-1; Plunkett v. Commissioner, 465 F.2d 299, 305 (7th Cir. 1972), affg. T.C. Memo. 1970-274; Arctic Ice Cream Co. v. Commissioner, 43 T.C. 68 (1964); Harrison v. Commissioner, T.C. Memo. 1993-587; Mazzocchi Bus Co. v. Commissioner, T.C. Memo. 1993-43, affd. 14 F.3d 923 (3d Cir. 1994).  The elements of criminal tax evasion under section 7201 are similar to the elements of civil tax fraud under section 6653(b), and a guilty plea is equivalent to a conviction after trial for the purpose of collateral estoppel.  Gray v. Commissioner, supra at 246; Arctic Ice Cream Co. v. Commissioner, supra at 75.

In 1989, petitioner pleaded guilty to, and was convicted of, criminal tax evasion for 1983 under section 7201.  Therefore, petitioner is collaterally estopped to deny fraud for 1983, and petitioner is liable for the section 6653(b)(1) addition to tax for the entire deficiency for that year.

B. Section 6653(b)(2).  Section 6653(b)(2) imposes an addition to tax of 50 percent of the interest payable under section 6601 on the part of the underpayment due to fraud.  As with section 6653(b)(1), respondent bears the burden of proving, by clear and convincing evidence, that petitioner has an underpayment for the taxable year and that the underpayment is due to fraud.  Sec. 7454(a); Rule 142(b); DiLeo v. Commissioner, supra; Stone v. Commissioner, supra.  However, the interest-

sensitive addition of section 6653(b)(2) is imposed only on the portion of the deficiency shown by respondent to be due to fraud. Therefore, petitioner is collaterally estopped from denying the interest-sensitive fraud addition only with respect to the portion of the 1983 deficiency attributable to items that he admitted in his guilty plea in the criminal trial and conceded in this case. For any remaining portion of the deficiency, respondent must prove: (1) That there is an underpayment of tax and (2) what part of the underpayment is due to fraud. Sec. 7454(a); Rule 142(b); DiLeo v. Commissioner, supra at 873; Stone v. Commissioner, supra.[4]

In order to prove an underpayment, the Commissioner cannot rely on the presumption of correctness of the statutory notice for deficiency purposes. See DiLeo v. Commissioner, supra at 873. Fraud is never presumed; even if a taxpayer's testimony is incredible, we may still be left with no more than a suspicion of fraud. Rinehart v. Commissioner, T.C. Memo. 1983-184. Suspicion, even a strong suspicion, of fraud will not sustain the Commissioner's determination.[5] See Drieborg v. Commissioner, 225

_____

[4] The Court of Appeals for the Third Circuit has stated that evidence must be so "'clear, direct, weighty and convincing as to enable the * * * [fact finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue'". United States Fire Ins. Co. v. Royal Ins. Co., 759 F.2d 306, 309 (3d Cir. 1985), quoting In re Estate of Fickert, 337 A.2d 592, 594 (Pa. 1975).

[5] See Balter, Tax Fraud and Evasion, par. 8.03[9][a], at 8-71 (1983 & 1994 Supp.).

F.2d 216, 219-220 (6th. Cir. 1955), affg. in part, revg. and remanding in part a Memorandum Opinion of this Court; Axelrod v. Commissioner, T.C. Memo. 1982-92, affd. without published opinion 711 F.2d 1062 (9th Cir. 1983).

Most of the underpayment determined by respondent for 1983 arises from alleged embezzlement income. Embezzled funds, once reduced to a taxpayer's complete dominion and control, are income to the taxpayer. James v. United States, 366 U.S. 213 (1961). However, as we have said:

> The Supreme Court's decision in James v. United States, supra, firmly established the principle that embezzled funds are income to the embezzler. That decision, however, does not stand for the proposition that all misappropriated funds are gross income of the person who illegally misapplied the funds. The decision necessarily confines taxation of an embezzler to circumstances where the embezzler receives a sufficiently cognizable benefit under the normal principles of income taxation.
>
> The Court referred to its oft-quoted language describing the breadth of Congress' intent regarding the statutory definition of gross income: all "'accessions to wealth, clearly realized, and over which the taxpayers have complete dominion and control'." James v. United States, supra at 219 (quoting Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955)). The Court refined this definition by noting that such gain exists when the "recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it." James v. United States, supra at 219 (quoting Rutkin v. United States, 343 U.S. 130, 137 (1952)). [Hobson v. Commissioner, T.C. Memo. 1992-312.]

Jewelry Purchased From F&M

Respondent has not persuaded us by proffering clear and convincing evidence that the Renaissance payment to F&M was not

for corporate purposes of Renaissance.  Respondent's only witness to this transaction was Mr. Klein.  Mr. Klein testified that the "assorted jewelry items" on the F&M receipts probably referred to personal jewelry items; i.e., one-of-a-kind creations.  He also testified that the receipt dated December 12, 1983, listing the purchase as "14K gold watch cases" was not the usual type of invoice form used by F&M and that F&M did not sell watch cases.

This testimony, without more, is not clear and convincing evidence of diversion of corporate funds by petitioner.  Even if the payment was for personal jewelry items, petitioner contends that they were business gifts on behalf of Renaissance.  Mr. Klein testified that it is common practice in the jewelry industry to give personal jewelry items as business gifts and that petitioner sometimes picked up jewelry items for other people.  If the items were Renaissance business gifts, then the corporate funds used to pay for them were not diverted for noncorporate purposes, and petitioner would have no embezzlement income with respect to them.

One way to prove that the payment was not for corporate purposes is to show that Renaissance received no value in return for the payment.  However, respondent presented no evidence to show this.  Another way to show that petitioner diverted corporate funds for noncorporate purposes is to show that Renaissance public shareholders took legal action against him for the misappropriation.  However, respondent also offered no

evidence that any outside shareholder brought legal action against petitioner for the F&M payment. There is an indication in the record that the SEC took some action against petitioner, but there is no evidence of why it did or the outcome of the proceeding. Respondent has not proven, by clear and convincing evidence, that petitioner diverted the F&M payment from Renaissance for noncorporate purposes. In addition, respondent has offered no proof that the jewelry items gave petitioner any economic benefit or accession to wealth. Respondent offered no testimony that petitioner later sold these items or even that he or his wife ever received or possessed any of the items. Respondent also offered no evidence that petitioner ever gave any of these items as personal gifts on his own behalf. See Estate of Geiger v. Commissioner, 352 F.2d 221, 231 (8th Cir 1965), affg. T.C. Memo. 1964-153 (holding that gifts of embezzled funds evidenced sufficient control to establish an accession to wealth and taxable income to the embezzling donor). Although we suspect that petitioner may have acquired control of these items and appropriated them to his own use, our suspicion, without more, is no substitute for clear and convincing evidence. Respondent has failed to carry her burden of proving that the jewelry items purchased from F&M came under petitioner's control so as to create income to him that resulted in an underpayment of tax.

W&Y Payment

We are satisfied that W&Y is a legitimate firm in the jewelry business. Respondent offered no evidence that the Renaissance payment to W&Y was not for legitimate corporate purchases. Nor did respondent offer evidence that the amounts paid to W&Y or the items purchased from W&Y came under petitioner's control. Respondent has not proven by clear and convincing evidence any underpayment of tax resulting from the W&Y payment.

Payments to Ron Gelfman

Respondent has also failed to prove an underpayment arising from the payments into the Ron Gelfman checking account at the Trust Co. There is no evidence, much less clear and convincing evidence, that these payments were for noncorporate purposes. Renaissance's corporate records contain receipts from Ron Gelfman Associates, showing the payments to be for business purchases. Respondent presented no contrary evidence that these were not actual Renaissance purchases. Respondent never showed that Renaissance did not receive value in exchange for the payments. The facts that the Social Security number on the Gelfman bank account was not in the Internal Revenue Service computer data base for the New York metropolitan area and that Ron Gelfman Associates is not known in the jewelry business may raise suspicions that someone diverted Renaissance funds for noncorporate purposes. These facts, however, without more, are

not clear and convincing evidence that Renaissance funds were actually so diverted by petitioner.

Moreover, there is no convincing evidence that petitioner received any accession to wealth from the funds that Renaissance deposited in the Ron Gelfman bank account. Respondent has not proven that petitioner controlled the Gelfman bank account. Cf. Beasley v. Commissioner, T.C. Memo. 1989-173 (holding that corporate funds diverted into controlled nominee bank accounts for noncorporate purposes were income).

The only evidence linking petitioner with the Gelfman account is a notation "I.D. by Eric Wynn" on the bottom of a check with three endorsements by a Ron Gelfman cashed against the Gelfman account. This "I.D. by Eric Wynn" does not prove that petitioner controlled the account or any of the funds deposited in the Gelfman account. Respondent's witness, Mr. Schlitt, testified that when a check is endorsed three times it probably means that the first endorsement is made outside of the bank, the second is in front of the teller, and the third is in front of a bank officer. Mr. Schlitt also testified that two people would have been present for the check to have a triple endorsement and a second identification. This testimony indicates that someone signed this check as Ron Gelfman in the presence of a bank teller and officer. Although we believe that this person was not the Ron Gelfman who testified at the criminal trial, it is possible that the person who signed the checks and the signature card

received the funds. But respondent's proof fails to persuade us that petitioner was that person or that petitioner actually received any accession to wealth from the funds. Respondent has not proven by clear and convincing evidence an underpayment resulting from the Ron Gelfman payments.

The F&M check to Ron Gelfman also does not help respondent's case. Mr. Klein testified that he thought the check was for money that he or F&M owed to petitioner. Even if that is true, there is no clear and convincing evidence that the payment resulted in taxable income to petitioner. It could have been repayment on a loan, in which case, even if petitioner received the money, it would not be taxable income to him.

Finally, respondent alleges that petitioner's trading in the Ron Gelfman brokerage account at Walter Capital proves that the account was a nominee account, and therefore, that the Ron Gelfman bank account was also a nominee account. This argument does not rise to the level of clear and convincing evidence. Respondent's witness, Mr. Grillo, testified that it could have been an account for an actual customer over which petitioner had discretionary trading authority. Respondent has failed to prove by clear and convincing evidence that petitioner received the Ron Gelfman funds, or acquired any accession to wealth that resulted in an omission of income and an underpayment of tax.

Respondent has not proven that petitioner had signature control over the Ron Gelfman bank account. Similarly, respondent

has not proven that petitioner was more than a mere conduit for someone else or that he ever received any of the funds at issue and used them for personal purposes. Nor has respondent proffered persuasive third-party testimony, as she did in Beasley v. Commissioner, supra, linking petitioner with the receipt and use of the diverted corporate funds. Respondent's evidence in this case, unlike that in Beasley, does not clearly and convincingly prove embezzlement income. Cf. Roberts v. Commissioner, T.C Memo. 1993-98 (finding fraud from embezzlement income where taxpayer used corporate funds to build and improve personal residences); Hobson v. Commissioner, T.C. Memo. 1992-312 (finding embezzlement income where funds were diverted into taxpayer's own bank accounts); Davis v. Commissioner, T.C. Memo. 1991-333 (finding embezzlement income where taxpayer used diverted funds to buy horse for daughter, cars for self and family, and contributed remaining funds to family owned corporation).

We need not reach the question of fraudulent intent for 1983 with respect to the unconceded items because respondent has failed to prove an underpayment for 1983 with respect to any of those items. Ishijima v. Commissioner, T.C. Memo. 1994-353. We therefore reject respondent's determination of section 6653(b)(2) additions for 1983, except with respect to the underpayment arising from petitioner's concession that he received unreported income during that year. See supra p. 2.

Issue 2:  1984--Section 6653(b)(1) and (2)

A. Section 6653(b)(1).  Because there was no conviction or admission for 1984, respondent must prove fraud in order to sustain the addition to tax for fraud under section 6653(b)(1). See Drieborg v. Commissioner, 225 F.2d at 219-220 (holding that the Commissioner's proof of fraud for one year will not sustain the Commissioner's burden for another year).  The F&M and W&Y transactions are subject to the same analysis for this addition and year as they are for the 6653(b)(2) addition for 1983.  For the reasons set out supra pp. 14-16 with respect to 1983, we find that respondent has failed to carry her burden of proving an underpayment concerning the F&M and W&Y transactions for 1984.

The final items for 1984 are the checks that Walter Capital made to the order of Joe Bass.  These transactions are subject to traditional analysis used to determine whether there is income: did petitioner receive the funds so as to have an accession to wealth, Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955), or did petitioner earn the fees, Lucas v. Earl, 281 U.S. 111 (1930)?

Although respondent has presented a stronger case on these transactions than she did on the alleged embezzlement transactions, she has failed to prove by clear and convincing evidence that petitioner received the Walter Capital payments. Respondent put all her effort at trial into trying to show that the Joe Bass bank account was petitioner's nominee account.

Respondent's evidence that the Joe Bass account at the Trust Company was petitioner's nominee account does not rise to the level of clear and convincing.[6] Respondent offered no handwriting expert to show that the Joe Bass signature was petitioner's. Indeed, the Government's handwriting expert testified at the criminal trial that the comparison of petitioner's handwriting exemplar with the Joe Bass signature was inconclusive. Also, respondent offered no evidence that petitioner ever withdrew any funds from the Joe Bass account.

Respondent has also failed to prove by clear and convincing evidence that the check payments to the order of Joe Bass represent consulting fees earned by petitioner. Respondent's only witness concerning these transactions, Mr. Grillo, could not remember what, if any, services were performed for these payments. However, he also testified that petitioner helped secure loans for Walter Capital. Mr. Grillo's equivocal testimony leaves us unpersuaded that respondent has sustained her burden. Mr. Grillo further testified that Walter Capital did issue a Form 1099 regarding these payments and that it would indicate the reason for the payments and the person receiving them. Mr. Grillo testified that he believed that the Form 1099

---

[6] Petitioner did plead guilty in the criminal case, and has stipulated in this case, to receiving the Renaissance check to Joe Bass for $31,115 during 1983, and its inclusion in his income. This does not, however, constitute clear and convincing proof that other funds paid into the Joe Bass account went to or were under the control of petitioner.

was included with the records turned over to the U.S. attorney's office for the criminal trial. However, respondent has failed to produce any Form 1099.

The facts of this case raise the suspicion that petitioner earned and received fees from Walter Capital that were paid in the form of checks to the order of Joe Bass. However, respondent's reliance on one witness who could not recollect the events surrounding the payments and her failure to provide any additional documentary evidence, in the form of the Form 1099, does not elevate our suspicion to the level of certitude required by the clear and convincing standard. Respondent has failed to persuade us that there is any underpayment with respect to the Walter Capital checks to the order of Joe Bass.

We need not reach the question of fraudulent intent for 1984 because respondent has failed to prove an underpayment for 1984. Because respondent has failed to prove by clear and convincing evidence that petitioner had an underpayment resulting from the F&M jewelry purchase, the purchase from W&Y, or the Walter Capital payments, we find no section 6653(b)(1) addition to tax for fraud for 1984.

B. Section 6653(b)(2). Nor do we uphold a section 6653(b)(2) addition to tax for 1984. By dint of the foregoing section 6653(b)(1) analysis, we have concluded that respondent has not carried her burden of proving by clear and convincing evidence that there is any underpayment for 1984 that was due to

fraud.  We therefore reject respondent's determination of a section 6653(b)(2) addition to tax for 1984.

Issue 3(a):  Deficiencies Attributable to Embezzlement Income[7]

Respondent's deficiency determinations are presumed to be correct; petitioner bears the burden of proving by a preponderance of the evidence that they are incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

The evidence proffered by respondent on the underpayments for fraud purposes was pretty thin gruel; less nourishing to the point of nonexistence is the case that petitioner presented. Petitioner failed to carry the burden of overturning the deficiencies determined by respondent.  Petitioner did not prove that any of the payments to Ron Gelfman, F&M, or W&Y was for a corporate purpose of the payor.  There was no proof that any Renaissance checks to Ron Gelfman or W&Y were supported by any actual purchases of jewelry or supplies by Renaissance.  The checks to F&M do reflect actual purchases, but they are purchases of personal jewelry items, and petitioner did not show what happened to those items.  Petitioner did not prove that the

---

[7] Respondent also determined that petitioner overstated his itemized deductions for 1984 in the amount of $17,905. Petitioner presented no evidence at trial on this issue and did not mention it in his brief.  Therefore, petitioner is deemed to have conceded this issue.  In his petition, petitioner argues that his earlier guilty plea to tax evasion was in full settlement of all tax liabilities, criminal and civil. Petitioner has shown no evidence that the plea had any such effect; we find this contention to be without merit and likewise conceded because it was not argued at trial.

jewelry items were business gifts.  Petitioner did not provide any explanation or evidence to show that the preparation of the duplicate receipts for the F&M transactions did not amount to a falsification of documents for the purpose of concealing diversions of corporate funds.  Petitioner has not sustained his burden of proving that any of the payments in question were not includable in his gross income.

Although respondent offered no clear and convincing proof that the funds or jewelry came under petitioner's control or created an accession to petitioner's wealth, petitioner offered no proof to the contrary, which it was his burden to do in order to overturn respondent's deficiency determinations.  Petitioner also failed to provide any evidence to show that the F&M payment to Ron Gelfman was not income to him.  Petitioner has failed to carry his burden of proof.  We uphold respondent's determinations that petitioner had unreported embezzlement income for 1983 and 1984.

Issue 3(b): Walter Capital Payments

Petitioner offered no proof that he did not receive the Walter Capital payments to the order of "Joe Bass" in 1984. Petitioner opened the bank account at the Trust Co. in the name of Joe Bass.  He told Mr. Grillo to make the checks payable to Joe Bass.  Petitioner called no witness at trial that knew or knew of Joe Bass and presented no evidence other than his self-serving assertions that he did not receive these funds, while

there is contrary evidence that petitioner did work for Walter Capital that was a likely source of income from services rendered. Cf. Armes v. Commissioner, 448 F.2d 972 (5th Cir 1971), affg. in part, revg. and remanding in part T.C. Memo. 1969-181. Petitioner's self-serving testimony is insufficient to carry the day for the purpose of disproving respondent's deficiency determination. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Petitioner has failed to meet his burden of proving that he did not receive the amounts paid to the Joe Bass account by Walter Capital and that they did not constitute income to him. We uphold respondent's 1984 deficiency determinations with respect to the Joe Bass items.

Issue 4: Section 6653(a)(1) and (2)--Negligence

Section 6653(a) provides for an addition to tax if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. Section 6653(a)(1) provides for an addition of 5 percent on the entire deficiency if any part of the deficiency is due to negligence or intentional disregard of rules and regulations, and section 6653(a)(2) provides for an addition equal to 50 percent of the interest due on any part of the deficiency due to negligence. Sec. 6653(a)(1) and (2). However, section 6653(b)(3) obviates the addition under this subsection when there is an addition for fraud under subsection (b) for the same year. Miller v. Commissioner, 94 T.C. 316, 332 (1990). Because the fraud addition arising from petitioner's guilty pleas

and concessions obviates the negligence addition for 1983, we need only address section 6653(a) for the year 1984.

For the purpose of section 6653(a), negligence has been defined as the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Emmons v. Commissioner, 92 T.C. 342, 349 (1989), affd. 898 F.2d 50 (5th Cir. 1990); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner has the burden of proving by a preponderance of the evidence that he did not act negligently or with intentional disregard of rules and regulations. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982); Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

The evidence supports the conclusions that petitioner acted negligently and intentionally disregarded the rules and regulations for 1984. Petitioner failed to submit any evidence to show that he had any reasonable basis for the substantial omissions from his income tax return for 1984. Petitioner has not carried his burden of proving that he acted reasonably or prudently with respect to his income tax obligations for 1984.

Therefore, we hold that petitioner is liable for the additions to tax under section 6653(a)(1) and (2) for negligence or intentional disregard of rules and regulations.

Issue 5:  Section 6661 Additions--Substantial Understatement

Respondent also determined additions to tax for substantial understatement of income tax under section 6661. For the years

1983 and 1984, section 6661(a) imposes an addition to tax equal to 10 percent of the underpayment attributable to the understatement for that year.  An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown or $5,000.  Sec. 6661(b)(1)(A).  An "understatement" is defined as the excess of the tax required to be shown on the return over the tax actually shown on the return, but the understatement is reduced if and to the extent that the taxpayer either had substantial authority for, or adequately disclosed, the tax treatment shown on the return.  Sec. 6661(b)(2).  Respondent's determination of the addition is presumed to be correct, and petitioner bears the burden of proving that he is not liable for the addition.  Rule 142(a).

If the taxpayer shows that there was reasonable cause for the understatement and that he acted in good faith, the Secretary may waive all or any part of the addition to tax under section 6661(a).  Sec. 6661(c).  In this Court, the taxpayer must prove that the Secretary abused his discretion by denying the waiver of the section 6661(a) addition to tax.  Mailman v. Commissioner, 91 T.C. 1079, 1083-1084 (1988).  To carry this burden petitioner must show (I) that he requested a waiver under section 6661(c), Klieger v. Commissioner, T.C. Memo. 1992-734, (ii) that respondent refused the request, id., and (iii) that respondent's refusal to waive the addition to tax was arbitrary, capricious,

or without sound basis in fact, <u>Mailman v. Commissioner</u>, <u>supra</u> at 1084.

Petitioner did not provide any evidence to show that he had authority for the understatements of income on his 1983 and 1984 income tax returns. Petitioner did not disclose any part of the underpayments for these years. Petitioner did not provide any evidence that he requested a waiver or that respondent denied any such request. Even if petitioner had requested a waiver, the lack of evidence in the record indicates that he would not have been able to show reasonable cause for the understatements or that he acted in good faith. Respondent's determinations of section 6661(a) additions to tax for 1983 and 1984 will be sustained, subject to recomputation under Rule 155.

<u>Issue 6:  Section 6651(a)--Late Filing</u>

Section 6651(a) provides for an addition to tax where a taxpayer files a tax return after the due date. The addition is equal to 5 percent of the underpayment for every month the return is late, with a maximum of 25 percent. If the Commissioner determines this addition in the deficiency notice, the taxpayer bears the burden of proving that the return was timely filed, or that his failure to file was due to reasonable cause and not willful neglect. Rule 142(a); <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985); <u>Wm. J. Lemp Brewing Co. v. Commissioner</u>, 18 T.C. 586, 591-592 (1952).

Respondent determined in her notice of deficiency that petitioner is liable for additions to tax under section 6651(a) in amounts equal to 25 percent of the underpayments for 1983 and 1984. In her answer, respondent conceded that this addition was not due for 1983. On brief, respondent conceded that if we determine that petitioner is not liable for the addition to tax for fraud under section 6653(b) for 1984, then petitioner is liable for no more than a 10-percent addition to the underpayment under section 6651(a).

Petitioner offered no proof that he timely filed his return for 1984, or that the late filing was due to reasonable cause and not willful neglect. Petitioner has not carried his burden. We therefore sustain respondent's determination that petitioner is liable for the 10 percent addition to tax under section 6651(a) for 1984.

To reflect the foregoing,

<u>Decision will be entered under</u> <u>Rule 155</u>.